UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | | |
|---|---|---|
| MSPPR, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  21-cv-05362 |
| | ) | |
| WEST BEND MUTUAL | ) | |
| INSURANCE COMPANY | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant | ) | |

## **COMPLAINT**

Comes Now Plaintiff, MSPPR, LLC, by and through its attorneys, Bartell Powell LLP for

a cause of action against Defendant, WEST BEND MUTUAL INSURANCE COMPANY,

respectfully states and alleges as follows:

THE PARTIES

1)  Plaintiff, MSPPR, LLC ("MSPPR") is an Illinois limited liability company with its

principal place of business within the boundary of the Northern District of Illinois.  Its sole

member resides in Illinois and is a citizen of Illinois.

2)  Defendant, West Bend Mutual Insurance Company ("West Bend"), is a Wisconsin

corporation with its principal place of business in West Bend, Wisconsin.  West Bend is a citizen

of Wisconsin.

JURISDICTION / VENUE

3) The amount in controversy exceeds seventy-five thousand dollars (>$75,000.00),

exclusive of costs and interest, and diversity jurisdiction exists pursuant to 28 U.S.C. §1332.

1

4)  Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391 in that the events and/or omissions giving rise to this claim occurred within the Chicago Division, Northern District of Illinois boundaries of this Court.

5)  Assignment of this case in Chicago is proper pursuant to Local Rule 40.1 in that the events and/or omissions giving rise to this claim occurred within Park Ridge, Illinois.

FACTS

6)  West Bend issued insurance policy number 1830309-4 (the "Policy") that covered the Plaintiff's commercial property located at 28 Main Street, Park Ridge, Illinois (the "Building"). A true and accurate copy of the Policy is attached hereto as Exhibits "A."  The Building is situated in a business district where it can be leased to retail stores and other commercial ventures.

7)  The Policy covered property damage at replacement cost and included compensation for any business interruption.  The Policy also included a "Plus Pak – Business Owners Property Endorsement" which expanded and enhanced the insurance coverage to include a) Ordinance or Law Coverage to both the damaged and undamaged portions of the building, b) Demolition Cost Coverage, and c) Increase Cost of Construction related to building code upgrades required by governmental authorities.

8)  On July 27, 2017, the Policy was in full force and effect, the Plaintiff had paid all premiums then due and owing, and all other conditions of coverage were satisfied or waived.

9)  On or about July 27, 2017, the Building sustained extensive damage to the structure's roof system, mechanical systems, and extensive water damage throughout the interior of the Building.

10) On July 31, 2017, MSPPR contacted West Bend and made a claim for damages. Employee, Patricia Witt, was assigned by West Bend as its claims adjuster.

11) West Bend then undertook managing the repairs of the Building itself. Between July 31, 2017 and September 26, 2017, West Bend hired a general contractor doing business as "Damage Control" to begin the construction project to repair the Building.

12) On or about November 27, 2017, West Bend terminated contractor "Damage Control" due to its opinion that Damage Control's estimates were non-specific and incomplete.

13) On or about November 29, 2017, West Bend hired a second general contractor doing business as "Anderson and Anderson." West Bend changed its claims adjuster from Patricia Witt to Steve Parker.

14) On December 12, 2017, Newel Anderson of Anderson and Anderson did a site visit of the Building for the purpose of beginning its reconstruction plans.

15) On July 25 and July 26, 2018, West Bend sent MSPPR an estimate by Anderson and Anderson along with architectural drawings dated July 18, 2018 that contained many inaccuracies and were incomplete. West Bend claimed that the maximum amount payable to damages was $325,939.99.

16) Shortly thereafter, West Bend terminated Anderson and Anderson as the second general contractor. However, West Bend did not inform MSPPR that Anderson and Anderson had been terminated until August 29, 2018. MSPPR attempted to no avail to contact representatives of Anderson and Anderson during this time to move the project forward.

17) West Bend sent a second set of architectural drawings on August 29, 2018 to MSPPR. Said drawings were dated August 3, 2018.

18)  On September 6, 2018, MSPPR was frustrated that the process had been going on for over a year and there was no general contractor on the project to move forward.  MSPPR wrote a letter to West Bend documenting that the process had been "extremely slow."  MSPPR indicated that additional funds were needed to hire a new general contractor so that work could commence.

19)  On September 7, 2018, West Bend informed MSPPR that West Bend would not pay any additional funds unless MSPPR signed a release form waiving claims.  MSPPR did not sign the release form and West Bend did not tender additional funds until being required to by an umpire seeking resolution to the case in September, 2021.

20)  On September 10, 2018, the architect resigned indicating that it would be a conflict of interest for him to proceed.

21)  Having been denied West Bend's funds and management, MSPPR was required to hire its own contractor and architect to continue.  When discussing the plans with prospective general contractors, MSPPR was informed by them that they could not adequately prepare bids because the plans dated August 3, 2018 were incomplete and could not be submitted to the City of Park Ridge to obtain a permit.

22)  On February 1, 2019, West Bend rejected MSPPR's request for West Bend to pay for new architectural drawings, indicating that the plans "are acceptable for both obtaining building permits and for completion of the repairs that are required as a direct result of your loss."

23) On February 15, 2019, MSPPR requested payment for architect fees, an inflationary repair cost adjustment, and loss of rent until the reconstruction was completed.

24)  On March 5, 2019, West Bend's rejection of MSPPR's request indicated that the 8/3/2018 architect plans had been approved by the City of Park Ridge and that MSPPR or a new

4

general contractor could make any necessary changes to the plan by using the CAD file of the West Bend architect.

25) In fact, West Bend or its contractors had never submitted the plans to the City of Park Ridge, nor had they been approved by the City. Additionally, MSPPR was correct in that the plans were not completed in sufficient detail and the correct format to be able to obtain a permit.

26) Contrary to West Bend's assertion on or about March 5, 2019, the Illinois Architecture Practice Act of 1989 holds that only a licensed architect can modify, submit, and stamp technical submissions tendered to city authorities. See 225 ILCS 305/1 et. seq.

27) On April 4, 2019, MSPPR indicated to West Bend that its estimate had not included a City of Park Ridge stormwater code requirement fee. MSPPR requested the fee be paid as well as recoverable depreciation. West Bend denied the request.

28) In a letter dated May 3, 2019, West Bend again stated that the building plans had been approved by the City of Park Ridge and that West Bend had not prevented or caused any additional delay in MSPPR's ability to begin repairs. West Bend rejected paying lost rent and Stormwater fees that equaled five percent of the project. West Bend asserted that it was MSPPR that had delayed construction, while lying in the same letter about the status of approval with the City.

29) Unfortunately, by rejecting new architect fees for approximately four-and-a-half months after the initial failure of West Bend to prepare adequate plans, construction could not practically begin (without consideration of the others delays referenced herein) until, at the earliest time, the spring of 2020 due to the time needed to 1) develop new architectural drawings

and a complete package for Park Ridge, 2) attain the required approvals to gain a permit and 3) wait for winter weather to subside.

30) On September 17, 2019, West Bend offered three additional months of rent but denied paying additional months of rent loss or repairs for the electrical, plumbing and fire protection systems.

31) On October 27, 2019, MSPPR met with building officials of the City of Park Ridge. Park Ridge officials stated that the entire building would need to be brought up to code. At any point in what was now over a two-year process, West Bend or its contractors could have discerned that the Building would need to be brought up to building code. However, West Bend improperly attempted to force MSPPR to release its claims and accept West Bend's estimate that did not include any of this work.

32) On November 8, 2019, MSPPR submitted the West Bend plans of 8/3/2019 to verify they were not acceptable and on December 2, 2019, Park Ridge denied the application due to the plans missing required components.

33) On December 4, 2019, MSPPR hired Neri Architects to create new, accurate and complete plans as required by the City of Park Ridge.

34) On June 22, 2020, new plans submitted by Neri Architects were approved by the City of Park Ridge.

35) On June 24, 2020, MSPPR received an estimate from its selected contractor, Wolf Point Builders to proceed.

36) On July 1, 2020, a West Bend appraiser inspected the Building, along with an appraiser hired by MSPPR. West Bend's appraiser failed to consider improvements now necessary due to changes in the building code.

37) West Bend offered the maximum amount of $562,004.81 to resolve the claim in March, 2021, which was not sufficient to engage the general contractor.

38) Due to the lack of approval by West Bend of the estimate, the permit expired and on April 1, 2021, MSPPR re-engaged Neri Architects to assist in gaining re-approval. MSPPR then submitted the plans to two other general contractors to receive estimates. On July 1, 2021, the City of Park Ridge approved the submitted plans.

39) An umpire concluded in September, 2021, that $975,000.00 should be awarded in construction damages and that $275,400 should be awarded for Rent Loss / Lost Business Income.

40) The parties have entered into a tolling agreement and addendum which extends the requisite statute of limitations to on or after the date of the filing of this cause of action.

41) Throughout the process, West Bend denied coverage for the fire protection, electrical and plumbing systems claiming that there was no fire protection system in the Building before damage occurred. In fact, West Bend's own documents show these systems to be present.

42) West Bend omitted to its appraiser the need to pay the Park Ridge Water Detention Fee which is 5% of the overall construction budget and its appraiser did not reference the fee in its appraisal.

43) The general contractor Anderson and Anderson indicated that West Bend only requested that Anderson and Anderson review a particular area and that the rest of the Building was beyond the area they were assigned to look at, despite there being damages throughout the entire structure. West Bend represented to MSPPR, however, that Anderson and Anderson's job was to determine the entire scope of damage.

44) After West Bend hired an attorney, West Bend misrepresented that MSPPR only had a basic policy and the items in the premium policy were not included. This statement was not accurate and was easily discernable by reading the policy endorsement.

45) The appraisals and payments to date exclude damages MSPPR suffered due to loss of rent, except for fifteen (15) months. By the time construction is expected to be completed, MSPPR should be paid for at least sixty-eight (68) months. Each month should have generated approximately $19,000 in rental revenue. Thus, MSPPR is still owed a minimum of fifty-three (53) more months of revenue.

46) The West Bend architectural plans contained substitutions which were presumably made to underpay MSPPR, such as changing the existing brick and limestone materials into a metal panel system without the approval of MSPPR.

47) When determining the amount of business income that MSPPR should receive, West Bend utilized a radius of 56 times the area around the Building, including several other towns and suburbs that have substantially lower building values and rents. This had the effect of erroneously lowering the amount West Bend would have to pay. The misrepresentation of the rent value by West Bend was recognized by the appraisal umpire who awarded $275,400.00 compared to West Bend's assertion that only $227,516.26 was owed during the same time period.

48) Throughout the process, West Bend asserted that the permit fees needed for the construction were $0 to $550, when in fact they were near $25,000.00.

49) After the appraisal process was complete and the umpire issued a decision, West Bend submitted a check to MSPPR that was over $42,000 short and was paid to the wrong entity.

50) As a result of West Bend's wrongful actions and lack of good faith in completing its obligations in accordance with the contract, MSPPR has been required to incur substantial additional costs, including, but not limited to,

a) the hiring of an attorney to assist throughout the claims process;

b) the hiring of an attorney to assist MSPPR in preparing and assisting throughout this lawsuit process;

c) the hiring of an appraiser and 50% of the fee for an appraisal umpire;

d) the hiring of its own architect;

e) the hiring of its own real estate specialist;

f) the hiring of its own general contractor;

g) the payment of real estate taxes, utilities, and other carrying costs;

h) incurring time by MSPPR's principals to handle the claim issues and maintain the building so that further damage is mitigated to the extent possible;

i) loss of value of the Building in that it has been unable to secure long-term tenants, has lost marketability due to its condition, and is perceived in the community as having long-term issues

j) the loss of real estate income and the interest on those amounts, along with opportunity costs for not having those funds available for other projects and investments;

## COUNT I – 215 ILCS §5/155

51) Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 of this Complaint as for this Paragraph 51.

52) Plaintiff seeks recovery of statutory damages and fees under 215 ILCS §5/155 based upon Defendant's unreasonable and vexatious refusal and delay in resolving the claim.

a) Refusing to proceed repairing Plaintiff's building unless if Plaintiff signed a "Release" first;

b) while claiming that they were fully repairing the Building, West Bend substituted a cheaper metal panel system for the brick and limestone façade and concealed the change by having it referenced in construction drawings which cannot be easily discerned by someone without professional construction training.

c) West Bend misrepresented the costs of the permits as being $0 to $550, when in actuality the cost was near $25,000.00.

d) West Bend misrepresented that there was not a sprinkler system in the Building, when their own professionals evaluating the damage and developing repairs described the existing fire sprinkler system in its documents.

e) West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents.

f) West Bend misrepresented that the architect plans dated 8/3/19 were sufficient and that MSPPR or its contractor could legally change them, even though West Bend knew that both were not licensed architects;

g) West Bend misrepresented that MSPPR did not have "Plus Pak Code Upgrade" coverage and that the scope of repairs West Bend was required to cover were smaller than Plaintiff's true policy covered;

h) West Bend misrepresented in its estimates the applicability of the City of Park Ridge's Stormwater fee that amounted to 5% of the total project cost.

i) West Bend misrepresented and attempted to intimidate MSPPR when asserting MSPPR was at fault for not moving forward on the project, when it was West Bend who was falsely misrepresenting that the architect plans being ready and that the city had already permitted the project;

j) West Bend used its false statements about the architect plans being ready and the city already permitting the project to justify its decision to not continue paying additional business income to MSPPR;

k) West Bend misrepresented the rental rate owed to MSPPR for its lost income by using comparables in a search area 56 times larger than the neighborhood area of the Building and including several towns and villages with less desirable locations and fewer features where rental values are nowhere close to those of the neighborhood the Building sits in;

l) West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner.

53) Pursuant to 215 ILCS §5/155, the actions of West Bend constitute a vexatious and unreasonable delay in the settlement of MSPPR's policy in that, when faced with demands that West Bend repair the damage to the Building, it has refused fairly performing the work or compensating the Plaintiff for the damages owed to the Plaintiff. The actions described herein have resulted in the situation where the Plaintiff still does not have its building repaired at the time of the filing of this suit, more than four (4) years from the date the damage occurred.

54) These actions constitute a coercive practice designed to compel compromise of the claim and has resulted in a lengthy delay resolving the claim.

55)  As a direct and proximate result of these practices, the Plaintiff suffered the damages further referenced herein.

WHEREFORE, the Plaintiff prays this Court enter judgment in its favor and against West Bend for:

(a) the remaining amounts unpaid under the policy,

(b) its reasonable attorney's fees,

(c) interest.

(d) the additional costs that MSPPR was required to pay to sustain its claim (including, but not limited to the hiring of an attorney during the claims process appraiser, umpire, and other professionals), and

(e) the penalty amount described in 215 ILCS §5/155(1)(a), (b), or (c).


## COUNT II – BREACH OF INSURANCE CONTRACT

56)  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 of this Complaint as for this Paragraph 56.

57)  The Policy referenced herein was a valid contract between the Plaintiff and the Defendant.

58)  The following actions by West Bend constituted a breach of the contract and the requirement that West Bend act in good faith in the performance of the contract:

a) Refusing to proceed repairing Plaintiff's building unless if Plaintiff signed a "Release" first;

b) while claiming that they were fully repairing the Building, West Bend substituted a cheaper metal panel system for the brick and limestone façade and concealed the

change by having it referenced in construction drawings which cannot be easily discerned by someone without professional construction training.

c) West Bend misrepresented the costs of the permits as being $0 to $550, when in actuality the cost was near $25,000.00.

d) West Bend misrepresented that there was not a sprinkler system in the Building, when their own professionals evaluating the damage and developing repairs described the existing fire sprinkler system in its documents. described the existing fire sprinkler system in its documents.

e) West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents.

f) West Bend misrepresented that the architect plans dated 8/3/19 were sufficient and that MSPPR or its contractor could legally change them, even though West Bend knew that both were not licensed architects;

g) West Bend misrepresented that MSPPR did not have "Plus Pak Code Upgrade" coverage and that the scope of repairs West Bend was required to cover were smaller than Plaintiff's true policy covered;

h) West Bend misrepresented in its estimates the applicability of the City of Park Ridge's Stormwater fee that amounted to 5% of the total project cost.

i) West Bend misrepresented and attempted to intimidate MSPPR when asserting MSPPR was at fault for not moving forward on the project, when it was West Bend who was falsely misrepresenting that the architect plans being ready and that the city had already permitted the project;

13

j) West Bend used its false statements about the architect plans being ready and the city already permitting the project to justify its decision to not continue paying additional business income to MSPPR;

k) West Bend misrepresented the rental rate owed to MSPPR for its lost income by using comparables in a search area 56 times larger than the neighborhood area of the Building and including several towns and villages with less desirable locations and fewer features where rental values are no where close to those of the neighborhood the Building sits in;

l) West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner.

59) The Plaintiff has demanded payment, and the Defendant has refused the same.

60) As a result of Defendant's breach, the Plaintiff has suffered damages as outlined herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and award damages, including:

a) the full amount owed under the policy;

b) lost rental income and opportunity costs/interest by not having income;

c) costs incurred by MSPPR reasonably incurred to discern concealed facts and misrepresentations made by West Bend, including, but not limited to, appraiser fees, umpire fees, and attorney's fees;

d) prejudgment interest;

e) real estate taxes, utilities and other carrying costs since the time the damage was incurred;

f) a reasonable value for the time and expenses incurred by MRPPR principals for addressing claims and mitigating further damage due to the Building's condition;

g) loss of value in the building;

h) punitive damages;

i) attorneys' fees and costs;

j) any additional amounts this Court deems just and equitable

## COUNT III – TORTIOUS BAD FAITH REFUSAL TO SETTLE

61) The Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 50 as for this Paragraph 61.

62)  West Bend had a duty to act in good faith in responding to Plaintiff's claim, repair requests, and settlement demands.

63)   West Bend was aware of the likelihood that the damages asserted by the Plaintiff were includable in the Policy.

64)   In addition to refusing to pay the amounts requested to be paid by the Plaintiff, the following actions constitute bad faith:

a) Refusing to proceed repairing Plaintiff's building unless if Plaintiff signed a "Release" first;

b) while claiming that they were fully repairing the Building, West Bend substituted a cheaper metal panel system for the brick and limestone façade and concealed the change by having it referenced in construction drawings which cannot be easily discerned by someone without professional construction training.

15

c) West Bend misrepresented the costs of the permits as being $0 to $550, when in actuality the cost was near $25,000.00.

d) West Bend misrepresented that there was not a sprinkler system in the Building, when their own professionals evaluating the damage and developing repairs described the existing fire sprinkler system in its documents.

e) West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents.

f) West Bend misrepresented that the architect plans dated 8/3/19 were sufficient and that MSPPR or its contractor could legally change them, even though West Bend knew that both were not licensed architects;

g) West Bend misrepresented that MSPPR did not have "Plus Pak Code Upgrade" coverage and that the scope of repairs West Bend was required to cover were smaller than Plaintiff's true policy covered;

h) West Bend misrepresented in its estimates the applicability of the City of Park Ridge's Stormwater fee that amounted to 5% of the total project cost.

i) West Bend misrepresented and attempted to intimidate MSPPR when asserting MSPPR was at fault for not moving forward on the project, when it was West Bend who was falsely misrepresenting that the architect plans being ready and that the city had already permitted the project;

j) West Bend used its false statements about the architect plans being ready and the city already permitting the project to justify its decision to not continue paying additional business income to MSPPR;

16

k) West Bend misrepresented the rental rate owed to MSPPR for its lost income by using comparables in a search area 56 times larger than the neighborhood area of the Building and including several towns and villages with less desirable locations and fewer features where rental values are no where close to those of the neighborhood the Building sits in;

l) West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner.

65)  The requests by MSPPR were reasonable under the circumstances and the denial was in bad faith.

66)  As a result of these actions, the Plaintiff has suffered the damages enumerated herein.

67)  As a direct and proximate result of these practices, the Plaintiff suffered the damages further referenced herein.

68)  The failure of West Bend to pay in a timely manner and its intentional delays was reckless and showed an indifference to the policyholder's interest.  As such, punitive damages should be awarded.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and award damages, including:

a) the full amount owed under the policy;

b) lost rental income and opportunity costs/interest by not having income;

c) costs incurred by MSPPR reasonably incurred to discern concealed facts and misrepresentations made by West Bend, including, but not limited to, appraiser fees, umpire fees, and attorney's fees;

d) prejudgment interest;

17

e) real estate taxes, utilities and other carrying costs since the time the damage was incurred;

f) a reasonable value for the time and expenses incurred by MRPPR principals for addressing claims and mitigating further damage due to the Building's condition;

g) loss of value in the building;

h) punitive damages;

i) attorneys' fees and costs;

j) any additional amounts this Court deems just and equitable

## COUNT IV – COMMON LAW FRAUD

69) The Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 50 as for this Paragraph 69.

70) The Defendant knowingly made the following misstatements with the intent of coercing the Plaintiff to accept a lower amount of proceeds than were rightfully due to it:

a) Refusing to proceed repairing Plaintiff's Building unless if Plaintiff signed a "Release" first;

b) while claiming that they were fully repairing the Building, West Bend substituted a cheaper metal panel system for the brick and limestone façade and concealed the change by having it referenced in construction drawings which cannot be easily discerned by someone without professional construction training.

c) West Bend misrepresented the costs of the permits as being $0 to $550, when in actuality the cost was near $25,000.00.

d) West Bend misrepresented that there was not a sprinkler system in the Building, when their own professionals evaluating the damage and developing repairs described the existing fire sprinkler system in its documents.

e) West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents.

f) West Bend misrepresented that the architect plans dated 8/3/19 were sufficient and that MSPPR or its contractor could legally change them, even though West Bend knew that both were not licensed architects;

g) West Bend misrepresented that MSPPR did not have "Plus Pak Code Upgrade" coverage and that the scope of repairs West Bend was required to cover were smaller than Plaintiff's true policy covered;

h) West Bend misrepresented in its estimates the applicability of the City of Park Ridge's Stormwater fee that amounted to 5% of the total project cost.

i) West Bend misrepresented and attempted to intimidate MSPPR when asserting MSPPR was at fault for not moving forward on the project, when it was West Bend who was falsely misrepresenting that the architect plans being ready and that the city had already permitted the project;

j) West Bend used its false statements about the architect plans being ready and the city already permitting the project to justify its decision to not continue paying additional business income to MSPPR;

k) West Bend misrepresented the rental rate owed to MSPPR for its lost income by using comparables in a search area 56 times larger than the neighborhood area of the Building

and including several towns and villages with less desirable locations and fewer features where rental values are no where close to those of the neighborhood the Building sits in;

l) West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner.

71) Defendant's false and misleading statements set forth herein were made with the intent of misleading the Plaintiff.

72) As a result of these actions, the Plaintiff has suffered the damages enumerated herein.

73) The Defendants actions set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to the Plaintiff and other consumers. As such, punitive damages are necessary to deter the Defendant and other similarly situated business interests from continuing to engage in these practices.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and award damages, including:

a) the full amount owed under the policy;

b) lost rental income and opportunity costs/interest by not having income;

c) costs incurred by MSPPR reasonably incurred to discern concealed facts and misrepresentations made by West Bend, including, but not limited to, appraiser fees, umpire fees, and attorney's fees;

d) prejudgment interest;

e) real estate taxes, utilities and other carrying costs since the time the damage was incurred;

f) a reasonable value for the time and expenses incurred by MRPPR principals for addressing claims and mitigating further damage due to the Building's condition;

g) loss of value in the building;

h) punitive damages;

i) attorneys' fees and costs;

j) any additional amounts this Court deems just and equitable

## COUNT V – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

74) The Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 50 as for this Paragraph 74.

75) West Bend offers a variety of products in the Illinois insurance marketplace to consumers and businesses, including, but not limited to, auto insurance, condo owner's insurance, homeowner's insurance, identity theft insurance, personal umbrella insurance, renter's insurance, workers compensation insurance, and property insurance.

76) The conduct referenced herein involves trade practices that affect the market generally and implicate consumer protection concerns. Because West Bend offers the above-referenced products to both consumers and businesses, the trade practices complained of by the Plaintiff are likely to affect consumers who might not have sufficient resources or sophistication to stay solvent or front a defense while West Bend denies fairly paying under its policies.

77) 815 ILCS 505/2 holds:

"Sec. 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false

promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that other rely on the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

78) As enumerated further herein, the following actions by West Bend constituted deception fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that other rely on the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section t of the Uniform Deceptive Trade Practices Act:

a) Refusing to proceed repairing Plaintiff's building unless if Plaintiff signed a "Release" first;

b) while claiming that they were fully repairing the Building, West Bend substituted a cheaper metal panel system for the brick and limestone façade and concealed the change by having it referenced in construction drawings which cannot be easily discerned by someone without professional construction training.

c) West Bend misrepresented the costs of the permits as being $0 to $550, when in actuality the cost was near $25,000.00.

22

d) West Bend misrepresented that there was not a sprinkler system in the Building, when their own professionals evaluating the damage and developing repairs described the existing fire sprinkler system in its documents.

e) West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents.

f) West Bend misrepresented that the architect plans dated 8/3/19 were sufficient and that MSPPR or its contractor could legally change them, even though West Bend knew that both were not licensed architects;

g) West Bend misrepresented that MSPPR did not have "Plus Pak Code Upgrade" coverage and that the scope of repairs West Bend was required to cover were smaller than Plaintiff's true policy covered;

h) West Bend misrepresented in its estimates the applicability of the City of Park Ridge's Stormwater fee that amounted to 5% of the total project cost.

i) West Bend misrepresented and attempted to intimidate MSPPR when asserting MSPPR was at fault for not moving forward on the project, when it was West Bend who was falsely misrepresenting that the architect plans being ready and that the city had already permitted the project;

j) West Bend used its false statements about the architect plans being ready and the city already permitting the project to justify its decision to not continue paying additional business income to MSPPR;

k) West Bend misrepresented the rental rate owed to MSPPR for its lost income by using comparables in a search area 56 times larger than the neighborhood area of the Building

and including several towns and villages with less desirable locations and fewer features where rental values are no where close to those of the neighborhood the Building sits in;

l) West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner.

79) The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce.

80) Defendant's false and misleading statements set forth herein were made with the intent of misleading the Plaintiff.

81) As a result of these actions, the Plaintiff has suffered the damages enumerated herein.

82) The Defendants actions set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to the Plaintiff and other consumers. As such, punitive damages are necessary to deter the Defendant and other similarly situated business interests from continuing to engage in these practices.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and award damages, including:

a) the full amount owed under the policy;

b) lost rental income and opportunity costs/interest by not having income;

c) costs incurred by MSPPR reasonably incurred to discern concealed facts and misrepresentations made by West Bend, including, but not limited to, appraiser fees, umpire fees, and attorney's fees;

d) prejudgment interest;

e) real estate taxes, utilities and other carrying costs since the time the damage was incurred;

f) a reasonable value for the time and expenses incurred by MRPPR principals for addressing claims and mitigating further damage due to the Building's condition;

g) loss of value in the building;

h) punitive damages;

i) attorneys' fees and costs;

j) any additional amounts this Court deems just and equitable

Respectfully Submitted,

Bartell Powell LLP

/s/ Jason S. Bartell
Jason S. Bartell, a partner of the firm

ATTORNEYS FOR THE PLAINTIFF

Jason Bartell, ARDC# 6255602
Bartell Powell LLP
3015A Village Office Place
Champaign, IL  61822
(217) 352-5900
Facsimile (217) 352-0182
Email: jbartell@bartellpowell.com