UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MSPPR, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WEST BEND MUTUAL INSURANCE COMPANY, <br><br> Defendant. | No. 21 CV 5362 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

West Bend Mutual Insurance Company issued an insurance policy to MSPPR, LLC for its commercial building in Park Ridge, Illinois. In July 2017, the building sustained extensive damage, MSPPR submitted a claim, and West Bend elected to manage the rebuild process. About a year later, West Bend sent MSPPR its contractor's estimate and architectural drawings. West Bend then terminated its relationship with its contractor and left reconstruction to MSPPR, which ultimately assumed management of the rebuild and hired its own architects and contractors to begin reconstruction. West Bend refused additional funds until an umpire issued an appraisal award in September 2021. Arguing that West Bend owes more than the umpire awarded, MSPPR brings claims under Illinois law for breach of contract, vexatious and unreasonable delay, bad faith refusal to settle, common-law fraud, and deceptive business practices. West Bend moves to dismiss under Rule 12(b)(6). For the reasons below, the motion is granted.

I. **Legal Standards**

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion, plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I accept all factual allegations as true and draw all reasonable inferences in MSPPR's favor, I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

Fraud allegations require more specificity. Fed. R. Civ. P. 9(b). Plaintiff must describe the "who, what, when, where, and how" of the fraud. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citation omitted). In other words, the plaintiff must include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (citation omitted).

II. **Background**

West Bend issued an insurance policy that covered MSPPR's commercial property in Park Ridge, Illinois. [1] ¶ 6.[1] The policy covered damages at replacement cost and compensation for business interruptions. *Id.* ¶ 7. During the policy period, in late July 2017, MSPPR's building sustained extensive damage to its roof and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

mechanical systems, as well as water damage throughout its interior. *Id.* ¶¶ 8–9. Four days later, MSPPR made a claim for damages under the policy; West Bend, in turn, immediately assumed management of the reconstruction process and hired a contractor for the project. *Id.* ¶¶ 10–11.

About a year later, West Bend sent MSPPR architectural drawings and an estimate from a contractor; West Bend said that $325,939.99 was the maximum amount payable to damages. *Id.* ¶ 15. The drawings were incomplete and contained many inaccuracies. *Id.* Shortly after sending the estimate and drawings, West Bend terminated its contractor, informed MSPPR of the termination, and sent a second set of architectural drawings to MSPPR. *Id.* ¶¶ 16–17. MSPPR sent a letter documenting West Bend's "extremely slow" process and indicated that it would need additional funds to hire a new contractor to start work. *Id.* ¶ 18. West Bend told MSPPR that it would not pay additional funds unless MSPPR signed a release form waiving claims; when MSPPR declined to sign, West Bend refused to proceed with repairs and did not tender additional funds. *Id.* ¶¶ 19, 52(a).

MSPPR assumed management of reconstruction and hired its own contractor and architect. *Id.* ¶ 21. Prospective contractors told MSPPR that they could not adequately prepare bids based on the second set of architectural drawings West Bend had provided because the drawings were incomplete and could not be submitted to the city to obtain a permit. *Id.* In February 2019, West Bend rejected MSPPR's request to pay for new architectural drawings and indicated that the plans it had provided were "acceptable for both obtaining building permits and for completion of

the repairs that are required as a direct result of your loss." *Id*. ¶ 22. The next month, West Bend rejected MSPPR's request to pay for architect fees, an inflationary cost adjustment, and loss of rent until the reconstruction was finished. *Id*. ¶¶ 23–24. West Bend also indicated that the second set of architectural plans had been approved by the City of Park Ridge and that MSPPR or its contractor could make any necessary changes to the plans. *Id*. ¶¶ 24, 52(f). Yet neither West Bend nor its contractors had obtained approval from the city, and only licensed architects may modify, submit, and stamp technical submissions tendered to city authorities. *Id*. ¶¶ 25–26 (citing 225 ILCS 305/1 *et seq*.).

Also in the spring of 2019, MSPPR requested that West Bend pay the city's stormwater code requirement fee, which West Bend had not included in its estimate but amounted to five percent of the project's cost. *Id*. ¶¶ 27–28, 52(h). West Bend denied that request and, in a May 2019 letter, again stated that the building plans it provided had been approved by the city and blamed MSPPR for delays in construction. *Id*. ¶¶ 28, 52(i). And West Bend used its false statements about the architect plans being ready and city-approved "to justify its decision to not continue paying additional business income to MSPPR." *Id*. ¶ 52(j). The complaint alleges that West Bend delayed construction "by rejecting new architect fees for approximately four-and-a-half months after the initial failure of West Bend to prepare adequate plans." *Id*. ¶ 29. Construction could not begin until spring 2020 at the earliest because MSPPR needed time to develop new architectural drawings, obtain permit approvals, and wait for winter weather to subside. *Id*.

4

West Bend offered to pay for three additional months of rent in the fall of 2019, but it denied payment for additional months of rent loss or for repairs to the building's electrical, plumbing, and fire-protection systems. *Id.* ¶ 30. That October, city officials told MSPPR that the entire building would need to be brought up to code, which West Bend could have discovered but did not mention or include in its estimates. *Id.* ¶ 31. MSPPR submitted West Bend's second set of architectural drawings to the city in November 2019 "to verify they were not acceptable;" less than a month later, the city denied the application because the plans lacked requisite components. *Id.* ¶ 32. MSPPR hired an architect in December 2019 to create new plans that would meet the city's requirements. *Id.* ¶ 33. In June 2020, the city approved the new plans and MSPPR received a new estimate from a contractor. *Id.* ¶¶ 34–35.

MSPPR and West Bend then engaged in an appraisal process to resolve the dispute regarding the amount of loss. The insurance policy provided:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

[1-1] at 40. So, in July 2020, a West Bend appraiser and an MSPPR appraiser each inspected the building. [1] ¶ 36. In March 2021, West Bend offered a maximum of

5

$562,004.81 to resolve the claim, but that was insufficient to engage MSPPR's selected contractor. *Id.* ¶ 37.

With no agreement, the parties submitted their dispute to an umpire. In September 2021, the umpire concluded that MSPPR should be awarded $1,250,400 for losses: $975,000 for construction damages and $275,400 for rent loss and lost business income. *Id.* ¶ 39. The rent and business income figure was nearly $50,000 more than West Bend had proposed, and permit fees were about $25,000 greater than West Bend had asserted. *Id.* ¶¶ 47–48, 52(c), (k). But on lost rental value, the appraisals and payments accounted for only 15 months. *Id.* ¶ 45. MSPPR says, however, that by the time construction is expected to be completed, it should be paid for at least 53 more months at approximately $19,000 per month in rental revenue. *Id.* And after the appraisal process, West Bend issued a check to the wrong entity that was over $42,000 short. *Id.* ¶ 49. MSPPR says that West Bend's lack of good faith in completing its obligations under the contract required MSPPR to incur substantial additional costs. *Id.* ¶ 50.

In the process of denying coverage, West Bend claimed that the building had no fire-protection system before the damage despite its own documents showing otherwise. *Id.* ¶¶ 41, 52(d).[2] It did not tell its appraiser about the city's water retention fee, which was five percent of the overall construction budget. *Id.* ¶ 42. West

---

[2] MSPPR also claims that "West Bend misrepresented that there was no value to the Building's electrical system when their own architect describes the existing electrical and plumbing system in its documents." [1] ¶ 52(e). But these two things are not in conflict. If the building had a defunct electrical system that existed but didn't work, that system might lack value. In any event, without more, it would be unreasonable to infer that the architect's description of an existing electrical system implied that the system had any value.

6

Bend told MSPPR that the insurance company's contractor would determine the entire scope of the damage, yet that contractor indicated that West Bend requested that the contractor review only a particular area. *Id.* ¶ 43. West Bend told MSPPR that it had a basic policy without benefits included in a premium policy, the inaccuracy of which "was easily discernable by reading the policy endorsement." *Id.* ¶¶ 44, 52(g). MSPPR alleges that West Bend's architectural plans contained alterations to underpay MSPPR—such as substituting a cheaper metal panel system for a brick and limestone façade—and referenced the changes in construction drawings in a way that could not "be easily discerned by someone without professional construction training." *Id.* ¶¶ 46, 52(b).

MSPPR brings claims for breach of contract, vexatious and unreasonable delay under 215 ILCS 5/155, bad faith refusal to settle, common-law fraud, and deceptive business practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. MSPPR relies on the same allegations to support each claim. *See* [1] ¶¶ 52(a)–(l), 58(a)–(l), 64(a)–(l), 70(a)–(l), 78(a)–(l). In short, MSPPR says that West Bend used "coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner." *Id.* ¶ 52(l). West Bend moves to dismiss all five counts for failure to state a claim.[3]

---

[3] The court has jurisdiction under 28 U.S.C. § 1332. MSPPR is an LLC with a single member who is a citizen of Illinois, West Bend is a citizen of Wisconsin, and the amount in controversy exceeds $75,000. [1] ¶¶ 1–3.

### III. Analysis

#### A. Breach of Contract

To prevail on a claim for breach of contract in Illinois, a plaintiff must prove: "(1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages." *See Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020).[4] The first two elements are not at issue. Instead, MSPPR contends that West Bend breached the insurance contract because it (1) failed to pay for covered losses and damages and (2) managed the early phase of the rebuild in bad faith. West Bend's policy provided that it would pay for direct physical loss or damage to the building, and MSPPR says that West Bend's failure to pay for covered expenses breached the contract. *See* [13] at 2; *see also* [1-1] at 20. MSPPR also argues that West Bend initially assumed responsibility of the rebuild to "improperly and secretly limit the scope of the repairs that were discoverable by" MSPPR. [13] at 2. Because West Bend did so while performing its payment obligations under the contract, MSPPR contends, West Bend violated its duty of good faith and fair dealing. *See id.* at 2–3.

MSPPR fails to allege breach on either front. First, under the parties' contract, the umpire's appraisal award settled the amount of loss. [1-1] at 40. "In the insurance context, appraisal is most often used to determine the amount of the loss sustained

---

[4] I apply Illinois law because the parties do not contest the issue. *See Kolchinsky v. Western Dairy Transport, LLC*, 949 F.3d 1010, 1013 n.2 (7th Cir. 2020) ("When there is no dispute over which state's law applies, the court will apply the substantive law of the state in which the federal court sits.").

under a property insurance policy." *FTI Int'l, Inc. v. Cincinnati Ins. Co.*, 339 Ill.App.3d 258, 260 (2nd Dist. 2003) (quoting 15 Couch on Insurance 3d § 209:4 (1999)). While appraisal is more limited than arbitration, Illinois courts view appraisal clauses as analogous to arbitration clauses and hold that both types of clauses are valid and enforceable in a court of law. *Lundy v. Farmers Grp., Inc.*, 322 Ill.App.3d 214, 218–19 (2nd Dist. 2001) (quoting *Beard v. Mount Carroll Mut. Fire Ins. Co.*, 203 Ill.App.3d 724, 727 (5th Dist. 1990)). The court's job is to determine "whether the parties' dispute is covered by the particular clause." *Lundy*, 322 Ill.App.3d at 219. If the dispute falls within the parameters of an appraisal clause, courts will not interfere with the appraiser's valuation "absent fraud or mistake." *Bailey v. Timpone*, 75 Ill.2d 539, 545 (1979); *see also Gen. Cas. Co. v. Tracer Indus., Inc.*, 285 Ill.App.3d 418, 420 (4th Dist. 1996) ("[W]hen a contract provides for a determination of amount by appraisers, substantial deference is given to that appraisal."). Accordingly, Illinois courts adhere to the principle that when "parties agree to have value affixed by an appraisal, they must abide by their own agreement." *Bailey*, 75 Ill.2d at 546 (citation omitted).

The umpire's appraisal award shuts the door on MSPPR's breach claim as it relates to damages and losses. In accordance with the policy, the parties hired their own appraisers to inspect MSPPR's building and later submitted a loss-value dispute to an umpire. [1] ¶¶ 36, 39; [1-1] at 40. The umpire concluded that MSPPR should be awarded $1,250,400 in construction damages, lost rent, and lost business income, and West Bend has paid MSPPR the award. [1] ¶ 39; [13] at 5. Under the clear terms of

9

the policy, the umpire's decision is binding. [1-1] at 40. Because the parties agreed to a binding appraisal process to resolve disputes regarding the amount of loss, I defer to the umpire's determination of MSPPR's losses. *See Bailey*, 75 Ill.2d at 546 ("[T]he trial court properly deferred to the meaning attached to the term 'Gross Income' by a majority of the arbitrators and properly entered an order in accordance with the arbitrators' understanding of the term."). The failure to pay expenses was not a breach because the contract contemplated disputes about covered losses, and payment on the umpire's award fulfilled the insurance company's payment obligation under the policy.

The complaint contains no allegations of error in the umpire's decision-making process. MSPPR asserts that it has alleged fraud and misconduct, citing allegations of West Bend's supposed misconduct and errors by West Bend's chosen appraiser. *See* [13] at 3. But to set aside the umpire's award, MSPPR must allege fraud or gross mistake by the umpire. *See Hayes v. Ennis*, 278 Ill.App.3d 121, 127 (4th Dist. 1996) ("An award will not be set aside due to gross errors in judgment in law or gross mistakes of fact by the arbitrator unless the errors or mistakes are apparent on the face of the award."). And nothing in the complaint calls into question the umpire's ultimate appraisal award. In fact, MSPPR highlights that the umpire rejected West Bend's appraisal and awarded more than West Bend had offered for both construction damages and lost rent and business income. [1] ¶¶ 15, 37, 39, 47; [13] at 4–5.[5]

---

[5] MSPPR contends in its brief that it spent "hundreds of thousands of dollars due to Defendant improperly performing the obligations it assumed" and that these costs were not considered in the appraisal process. [13] at 3. These allegations are not in the complaint, and

10

MSPPR further argues that the appraisal provision does not permit resolution of causation or coverage issues. [13] at 4 (citing *Breckenridge Apartment Homes, LLC v. Greater New York Mut. Ins. Co.*, No. 16 C 50115, 2016 WL 11700913 (N.D. Ill. Oct. 31, 2016)). There is no dispute here about causation or whether the policy covered MSPPR's losses. Plaintiff acknowledges as much: "In the case at hand, there is no dispute that there is a loss covered by the policy." [13] at 5. Instead, the dispute was and is about how much West Bend owed under the policy, and once invoked, that dispute fell within the province of the policy's appraisal provision. MSPPR acknowledges that West Bend paid the umpire's award before this suit was filed. [13] at 5. West Bend's payment of the umpire's award complied with the policy's terms.

MSPPR's other breach-of-contract theory—that West Bend breached its duty of good faith and fair dealing—is equally unpersuasive. True, every contract in Illinois includes an implied promise "between the parties that they will not do anything to injure the other party's right to enjoy the benefits of the contract." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 919 (7th Cir. 1997). But this implied covenant is "used as an aid in construing a contract under Illinois law, [and] does not create an independent cause of action ... [or] permit a party to enforce an obligation not present in the contract." *McArdle v. Peoria School District No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). West Bend's policy provided that, in the event of loss or damage covered by the policy, West Bend could elect to either pay the value of lost or damaged

---

a plaintiff may not amend the complaint in a brief opposing a motion to dismiss. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

property, pay the cost of repairing or replacing lost or damaged property, or "[r]epair, rebuild[,] or replace the property with other property of like kind and quality." [1-1] at 41. MSPPR says that West Bend breached its duty of good faith when it "requested to assume [rebuilding] responsibilities so that it would be in a position to improperly and secretly limit the scope of the repairs that were discoverable by the Plaintiff." [13] at 2. MSPPR appears to base this assertion on allegations that West Bend's architectural drawings contained "substitutions which were presumably made to underpay MSPPR" including using cheaper materials that were "referenced in construction drawings which cannot be easily discerned by someone without professional construction training." [1] ¶¶ 46, 52(b).

Drawing all reasonable inferences in plaintiff's favor, these allegations do not suggest West Bend exercised its discretion under the contract in bad faith. The complaint alleges that West Bend provided MSPPR with architectural drawings that expressly documented its plan to use different materials. That someone not versed in the trade may have struggled to discern the change doesn't suggest concealment or improper motive. There are no allegations that West Bend ever actually commenced construction or concealed anything. As such, the complaint does not plausibly suggest that West Bend's actions inhibited MSPPR's right to enjoy benefits under the contract.

Count II is dismissed.

### B. Section 155

"Section 155 does not create a cause of action but rather 'provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under a policy.'" *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 579 (7th Cir. 2021) (quoting *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 522–23 (1996)). The statute permits a court to award attorney fees and other costs when "there is in issue the liability of a company on a policy … of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155. Accordingly, an insured may seek extracontractual damages from an insurer under section 155 if "at least one of three issues remains undecided: (1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was an unreasonable delay in settling a claim." *Creation Supply*, 995 F.3d at 578. The law "presupposes an action on the policy, and therefore, in order for a plaintiff to recover under section 155, [it] must also succeed in the action on the policy." *Hoover v. Country Mut. Ins. Co.*, 2012 IL App (1st) 110939, ¶ 40 (citing *Cramer*, 174 Ill.2d at 523).

There's no dispute that the policy covers the loss, the umpire's appraisal award determined the amount of that loss, and West Bend has paid MSPPR that amount. The only question, therefore, is whether West Bend unreasonably delayed settling MSPPR's claim. The answer is yes, says MSPPR, because the umpire's award

13

substantially exceeded West Bend's July 2018 offer (about $326,000) and came four years after the date of loss, and West Bend did not pay the umpire's full award until "a few days prior to this lawsuit." [13] at 4–5. West Bend counters that because it complied with the contractual provision to settle the loss-value dispute via appraisal, MSPPR cannot prevail in its claim for section 155 damages.

West Bend is right—Illinois courts have held that a claim for bad faith against an insurer are "dependent on the success of the breach of contract action." *Hoover*, 2012 IL App (1st) 110939, ¶ 41. As discussed, the allegations do not suggest a breach of the policy. West Bend made multiple settlement offers, submitted the value dispute to the appraisal process, and paid the umpire's award before this suit. And while MSPPR says that it took West Bend unreasonably long to invoke the appraisal process, at any point after the parties disagreed on the amount of loss, MSPPR had the same right to make a written demand for an appraisal. [1-1] at 40. Moreover, "[i]t is well established that the length of time alone is not controlling in determining whether an insurer is guilty of vexatious delay in refusing to settle a claim." *Johnson Press of Am., Inc. v. N. Ins. Co. of New York*, 339 Ill.App.3d 864, 875 (1st Dist. 2003). MSPPR has failed to state a sufficient factual basis for sanctions, so dismissal of the claim is appropriate. *See Fed. Ins. Co. v. Healthcare Info. & Mgmt. Sys. Soc'y, Inc.*, No. 20 C 6797, 2021 WL 4864142, at *4 (N.D. Ill. Oct. 19, 2021).

Count I is dismissed.

### C. Duty to Settle

MSPPR labels Count III of the complaint as a "tortious bad faith refusal to settle" claim. [1] ¶¶ 61–68. But West Bend was under no duty to settle. The duty to settle arises only when a policyholder has relinquished defense of a suit to an insurer. *See Cramer*, 174 Ill.2d at 525–26 1996. Illinois courts established the duty to settle "to deal with the specific problem of claim settlement abuses by liability insurers where the policyholder has no contractual remedy." *Id*. at 525. But this reasoning "does not apply to first-party claims made directly by a policyholder against an insurer and which do not involve liability insurance." *Id*. Because express contractual remedies are available in such circumstances, "[t]he policyholder does not need a new cause of action to protect him from insurer misconduct where an insurer refuses to pay." *Id*. The "duty to settle" does not apply here, and MSPPR offers no argument to the contrary.

### D. Negligent Misrepresentation

Instead, MSPPR shifts gears to reframe Count III as a negligent-misrepresentation claim. A claim for negligent misrepresentation requires "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the speaker, (3) an intention to induce the other party to act, (4) action by the other party in reliance, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information." *Kim v. State Farm Mut. Auto. Ins. Co.*, 2021 IL App (1st) 200135, ¶ 49 (citation and alterations omitted).

15

But negligent misrepresentation does not apply here either. When "purely economic damages are sought," the Illinois Supreme Court "has imposed a duty on a party to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 335 (2006). Illinois courts have held that "[t]he sale of insurance policies is not the sale of 'information,' as contemplated under this exception." *Kim*, 2021 IL App (1st) 200135, ¶ 50 (citing *First Midwest Bank*, 218 Ill.2d at 341). Any informational disclosure from West Bend to MSPPR would have been contractual in nature, so its duty does "not sound in the torts of negligent misrepresentation." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012) (applying Illinois law).[6]

Count III is dismissed.

### E. Fraud Claims

MSPPR also brings claims for common-law fraud (Count IV) and deceptive practices under Illinois's Consumer Fraud Act (Count V). A plaintiff alleging common-law fraud must allege: (1) a false statement of material fact; (2) that is known or believed to be false by the person making it; (3) with intent to induce the plaintiff to act; (4) plaintiff's justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *See Newman v. Metropolitan*

---

[6] MSPPR also says "[t]his is essentially a claim that an owner might make against a general contractor for construction defects on a construction project." [13] at 7, 8. But that's not what the complaint alleges. There's no allegation that MSPPR commenced any work on the building. It hired contractors and architects, then scrapped its plans and left it to MSPPR to manage the rebuild.

16

*Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008)). Similarly, to state a deceptive-practices claim under the Consumer Fraud Act, a plaintiff must allege "that the defendant committed a deceptive … act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)). "Conduct is deceptive if it creates a likelihood of deception or has the capacity to deceive a reasonable consumer." *Id.* (quotation marks omitted).

Both common-law fraud and deceptive-practices claims must be pled with particularity under Rule 9(b). *See United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740 (7th Cir. 2021) ("Rule 9 represents a policy decision to protect potential fraud defendants from litigation based on nothing but rumor or speculation."); *Vanzant.*, 934 F.3d at 738 ("If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud."). Accordingly, a plaintiff advancing either claim "must plead the 'who, what, when, where, and how' of the alleged fraud." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant*, 934 F.3d at 738).

The complaint lacks the particularity Rule 9(b) demands for claims that sound in fraud. The complaint does not identify who communicated what to whom, or how or when the alleged misrepresentations were made. Instead, it lists twelve

17

allegations, some of which do not assert any misstatements of fact. *See, e.g.*, [1] ¶ 70(a) ("Refusing to proceed repairing Plaintiff's Building unless ... Plaintiff signed a 'Release' first."); *id.* ¶ 70(b) (West Bend referenced metal-panel substitution in a way that "cannot be easily discerned by someone without professional construction training"); *id.* ¶ 70(l) ("West Bend's use of coverage denials and stalling tactics to prevent MSPPR's Building from being repaired in a timely manner."). The remaining nine allegations purport to list West Bend misrepresentations or false statements, but none specify who at West Bend made such statements, or what they actually said, or how they were communicated. Rule 9(b) requires more. And because MSPPR relies on the exact same allegations to support its deceptive-practices claim, Count V also fails under Rule 9(b). *Compare* [1] ¶ 70, *with* [1] ¶ 78.

MSPPR offers no rebuttal to West Bend's argument that the complaint's fraud allegations lack the requisite particularity, and instead asks for leave to amend to "remedy any such deficiencies." [13] at 7. Because plaintiffs should ordinarily be given at least one shot to amend complaint, *see Ryder v. Hyles*, 27 F.4th 1253, 1258 (7th Cir. 2022), MSPPR has leave to amend the complaint.[7]

But MSPPR should note that lack of particularity is not the only problem with its fraud claims. MSPPR must plausibly allege justifiable reliance on the defendant's misrepresentations or omissions. *See Dilling*, 228 Ill.2d at 351 (justifiable reliance is a "critical element that must be established" by plaintiff). It is not enough to simply

---

[7] MSPPR provides new facts in its brief that it plans to add to an amended complaint. [13] at 9–10. West Bend is correct that this information is not currently before the court, and I have not considered it in ruling on the motion to dismiss.

identify a specific false statement—"[w]ithout reliance, a plaintiff cannot have been hurt by the fraud." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 591 (7th Cir. 2017) (internal quotation marks and citation omitted). Reliance is not justifiable if a plaintiff "has reason and opportunity to question the truth of the alleged misrepresentation." *Newman*, 885 F.3d at 1003. As it currently stands, the complaint does not detail how MSPPR reasonably relied to its detriment on any of West Bend's supposed misrepresentations.

Moreover, breach of contract alone is not actionable under the Consumer Fraud Act. *See Mashallah*, 20 F.4th at 322; *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005). A deceptive act or practice "involves more than the mere fact that a defendant promised something and then failed to do it" because "[t]hat type of 'misrepresentation' occurs every time a defendant breaches a contract." *Avery*, 216 Ill.2d at 169 (citation omitted). As currently written, the complaint repurposes its breach of contract claims as consumer-fraud claims, relying on identical allegations to support both causes of action. *Compare* [1] ¶ 58, *with* [1] ¶ 78. Those allegations center on West Bend's representations about costs associated with the rebuild process and disputes over coverage under the policy. *Id.* But to state a claim under the Consumer Fraud Act, MSPPR must plead "some stand-alone fraudulent act or practice and show that the injury they seek to redress was proximately caused by the alleged consumer fraud." *Mashallah*, 20 F.4th at 322–23 (internal quotation marks and citation omitted).

Counts IV and V are dismissed.

## IV. Conclusion

West Bend's motion to dismiss, [8], is granted. MSPPR's complaint is dismissed without prejudice. MSPPR has leave to file an amended complaint by April 29, 2022. The parties' status report remains due on April 26, 2022.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 15, 2022